UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JEFFREY IHM,

       Petitioner,

v.                      Case No:  2:18-cv-700-FtM-29NPM
                               Case No. 2:15-CR-3-FTM-29CM
UNITED STATES OF AMERICA,

       Respondent.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #211)[1] and Memorandum in Support (Cv. Doc. #2), both filed on October 23, 2018.  Petitioner also filed an Amendment to Memorandum in Support (Cv. Doc. #10) on December 19, 2018.  The government filed a Response in Opposition to Motion (Cv. Doc. #14) on March 25, 2019, to which petitioner filed a Reply (Cv. Doc. #15) on May 1, 2019.  Petitioner raises claims of ineffective assistance of trial and appellate counsel in connection with sentencing issues.  For the reasons set forth below, none of the issues have merit.

---

[1]The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the docket of the underlying criminal case as "Cr. Doc."

On January 21, 2015, a seven-count Indictment (Cr. Doc. #3) was filed against petitioner. On February 4, 2015, a federal grand jury in Fort Myers, Florida returned a nineteen-count Superseding Indictment (Cr. Doc. #18) charging petitioner with fourteen counts of wire fraud and five counts of aggravated identity theft. On August 24, 2016, petitioner entered unconditional guilty pleas to all counts without the benefit of a plea agreement. (Cr. Doc. #148.) The pleas were accepted and petitioner was adjudicated guilty. (Cr. Doc. #151.)

On October 6, 2016, the government filed a Motion for Forfeiture Money Judgment and Preliminary Order of Forfeiture of Specific Assets (Cr. Doc. #154.) This motion sought a money judgment against petitioner in the amount of $2,234,681.00, which were the proceeds petitioner obtained as the result of the wire fraud scheme charged in Counts One through Fourteen. Additionally, the government sought forfeiture of $315,000.00 which had been seized from petitioner's wife's checking account at Suncoast Credit Union as proceeds of the fraud, and real property located in Naples, Florida (petitioner's and his wife's homestead), which had been purchased with proceeds of the fraud.

In the final Presentence Investigation Report (Cr. Doc. #163), petitioner's offense level was computed pursuant to U.S.

Sentencing Guidelines Manual § 2B1.1.  The Base Offense Level of 7 was increased by the following specific offense characteristics: (1) 16 levels because the $2,298,233.90 loss amount exceeded $1.5 million but was less than $3.5 million; (2) an additional 2 levels because over 10 victims were involved; (3) another 2 levels because the offense involved sophisticated means by use of false websites, stolen identities, and spoofed email addresses to electronically conceal his tracks; and (4) 2 more levels because petitioner derived more than $1 million in gross receipts from one or more financial institutions, i.e., $1,064,644 from Wells Fargo.  (Cr. Doc. #163, ¶¶ 72-76.)  Petitioner had no objections to the factual accuracy of the Presentence Investigation Report (Cr. Doc. #165, pp. 1-2; Cr. Doc. #184, p. 6), but objected to the two-level enhancement for ten or more victims (Cr. Doc. #165, p. 2).  This objection was withdrawn at the sentencing hearing with petitioner's express approval.  (Cr. Doc. #184, p. 10.)  With a Criminal History Category of IV, the Sentencing Guidelines range was 92 to 115 months imprisonment, plus consecutive imprisonment for the aggravated identity theft counts.  (Cr. Doc. #163, ¶¶ 142-144.)  Restitution was computed as $2,298,233.93.  (Id., ¶ 156.)

On January 30, 2017, the Court sentenced petitioner to a term of 92 months imprisonment on Counts One through Fourteen, to be served concurrently; 24 months imprisonment on Count Fifteen, to

be served consecutively to the sentences in Counts One through Fourteen; 24 months imprisonment on Count Sixteen, to be served consecutively to the sentences in Counts One through Fourteen and Count Fifteen; and 24 months imprisonment on Counts Seventeen through Nineteen, to be served concurrently with each other and Count Sixteen; for a total of 140 months of imprisonment, followed by a term of supervised release. (Cr. Docs. ## 167, 169, 184.) Petitioner had no objection to the forfeiture or money judgment (Cr. Doc. #184, pp. 11-12), and on January 31, 2017, a Forfeiture Money Judgment and Preliminary Order of Forfeiture for Specific Assets (Cr. Doc. #168) was filed. This Judgment and Order forfeited $2,234,681.00 to the United States, as well as $315,000 from petitioner's wife's checking account at Suncoast Credit Union, and the real property located at 3343 Pacific Drive, Naples, Florida.

Judgment (Cr. Doc. #169) was filed on February 1, 2017, and included restitution totaling $2,298,233.93, payable in varying amounts to Wells Fargo Bank (Wells Fargo) ($1,064,664.74), CIT Group, Inc. (CIT) ($485,065.18), and Key Equipment Finance (Key) ($748,504.01), and forfeiture of the checking account proceeds and the real property. (Cr. Doc. #169, p. 7.)

Ancillary proceedings were conducted concerning the forfeiture of the real property, but no claim was filed by

petitioner's wife.  On February 9, 2018, a Final Order of Forfeiture (Cr. Doc. #205) was issued forfeiting the real property to the United States.

On April 27, 2018, petitioner filed a *pro se* Petition to Stop Levy on Personal Residence Pursuant to the Order of Forfeiture. (Cr. Doc. #206.)  Petitioner asserted his wife, who currently lived at the residence with her daughter, was an innocent owner of the real property and therefore the property should not be forfeited.  The government opposed the petition (Cr. Doc. #207), asserting that petitioner had no standing to assert a claim to the property on behalf of his wife, the petition was more than a year out of time, and the petition failed to allege the time and circumstances under which petitioner's wife accrued an interest in the property.  On May 8, 2018, the Court entered an Order (Cr. Doc. #208) dismissing the petition based on untimeliness and the lack of petitioner's standing.  On May 24, 2018, petitioner advised the Court that his wife did not desire to file any additional petitions relating to the Naples property, but requested the Court intervene and grant an extension of the time to vacate the property.  (Cr. Doc. #209.)  An Order (Cr. Doc. #210) denied this request on May 31, 2018.

On direct appeal of the criminal case, petitioner argued that his total sentence was substantively unreasonable.  Petitioner

asserted the district court failed to weigh all of the 18 U.S.C. § 3553(a) factors equally, and failed to consider the argument that had he been equipped with better legal representation at the beginning of the case, he would have accepted the government's initial plea offer of a lesser sentence. (Cr. Doc. #201, p. 2.) The Eleventh Circuit affirmed the convictions and sentences on October 31, 2017. (Cr. Doc. #201); United States v. Ihm, 716 F. App'x 833 (11th Cir. 2017).

## II.

Petitioner's §2255 motion was signed on October 16, 2018, and filed on October 22, 2018. The government concedes the motion is timely filed (Cv. Doc. #14, p. 2, n. 1), and the Court agrees.

### A. Ineffective Assistance of Trial and Appellate Counsel

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. See Hinton v. Alabama, 571 U.S. 263, 272-73 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) and Padilla v. Kentucky, 559 U.S. 356, 366

(2010)).  "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a Strickland claim, a court need not address both Strickland prongs if the petitioner fails to satisfy either of them."  Kokal v. Sec'y, Dep't of Corr., 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is "simply reasonableness under prevailing professional norms" considering all the circumstances.  Hinton, 571 U.S. at 273 (internal quotations and citations omitted).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689; see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (stating courts must look to the facts at the time of counsel's conduct). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See Strickland, 466 U.S. at 689-90.

To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action.  See Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); see also Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010).  Additionally, an

attorney is not ineffective for failing to raise or preserve a
meritless issue.  See United States v. Winfield, 960 F.2d 970, 974
(11th Cir. 1992); see also Ladd v. Jones, 864 F.2d 108, 109-10
(11th Cir. 1989).

The same deficient performance and prejudice standards apply
to appellate counsel.  See Smith v. Robbins, 528 U.S. 259, 285-86
(2000); see also Roe, 528 U.S. at 476-77.  If the Court finds
there has been deficient performance, it must examine the merits
of the claim omitted on appeal.  If the omitted claim would have
had a reasonable probability of success on appeal, then the
deficient performance resulted in prejudice.  See Joiner v. United
States, 103 F.3d 961, 963 (11th Cir. 1997).  Counsel is not
deficient for failing to raise non-meritorious claims on direct
appeal.  See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136,
1144-45 (11th Cir. 2005).

## B. Evidentiary Hearing

A district court shall hold an evidentiary hearing on a habeas
corpus petition "[u]nless the motion and the files and records of
the case conclusively show that the prisoner is entitled to no
relief[.]"  28 U.S.C. § 2255(b).  However, a district court is not
required to hold an evidentiary hearing where the petitioner's
allegations are patently frivolous, based upon unsupported
generalizations, or affirmatively contradicted by the record.

Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002). To establish entitlement to an evidentiary hearing concerning ineffective assistance of counsel, petitioner must "allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance." Hernandez v. United States, 778 F.3d 1230, 1232 (11th Cir. 2015).

## III.

### A. Ground One: Restitution, Forfeiture, Loss Amount

In Ground One, petitioner asserts that he received ineffective assistance of counsel from his trial and appellate attorney. Specifically, petitioner asserts his trial attorney failed to properly seek and obtain reductions in the loss and restitution amounts, and failed to properly protect his personal residence from forfeiture. Petitioner also asserts that his appellate attorney should have raised these issues on direct appeal. (Cv. Doc. #1, pp. 4-5, 12; Cv. Doc. #2, pp. 3-4.)

### (1) Reductions to Restitution Amounts

The Eleventh Circuit has held that "§ 2255 cannot be utilized by a federal prisoner who challenges only the restitution portion of his sentence because § 2255 affords relief only to those prisoners who 'claim[ ] the right to be released' from custody." Blaik v. United States, 161 F.3d 1341, 1343 (11th Cir. 1998). More recently, the Eleventh Circuit held that § 2255 is an

inappropriate vehicle for challenging the restitution portion of a sentence, even if the restitution claim is coupled with a claim seeking release from custody, and even if ineffective assistance of counsel is alleged.  Mamone v. United States, 559 F.3d 1209, 1210-11 (11th Cir. 2009).

Petitioner's claims that the Court improperly calculated his restitution amount, that his trial attorney provided ineffective assistance of counsel by failing to argue for a reduction in the restitution calculation, and that his appellate attorney provided ineffective assistance of counsel by failing to raise the restitution calculation issue on direct appeal are not cognizable in a § 2255 proceeding.  Accordingly, the restitution portion of Ground One is dismissed for lack of jurisdiction.

**(2)  Forfeiture of Personal Residence**

Petitioner argues that his trial attorney provided ineffective assistance of counsel by failing to properly protect his personal residence from forfeiture, and his appellate attorney provided ineffective assistance of counsel by failing to raise this forfeiture issue on direct appeal.  (Cv. Doc. #2, pp. 3-4.)

"[A] criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all." Young v. United States, 489 F.3d 313, 315 (7th Cir. 2007).  As with restitution claims, a challenge to forfeiture is outside the scope

of a § 2255 proceeding because § 2255 affords relief only to those prisoners who claim the right to be released from custody. Thus, a claim of ineffective assistance of counsel in connection with the forfeiture of petitioner's home is not cognizable on a § 2255 motion because it "would in no part relieve petitioner from his physical confinement. . . ." Green v. United States, No. 2:12-CR-5-FTM-29CM, 2017 WL 3327588, at *2 (M.D. Fla. Aug. 2, 2017).

Alternatively, even if forfeiture could be raised in a § 2255 proceeding, petitioner has shown no basis for relief. There is no doubt that the residence was purchased with the proceeds of petitioner's fraudulent activities. The Presentence Investigation Report, to which petitioner had no factual objections, so stated in at least four places. (Cr. Doc. #163, ¶¶ 9, 45, 115, 138.) The residence was therefore properly subject to forfeiture, and petitioner suggests nothing that his attorney could have done to prevent such a forfeiture. The fact that the property was petitioner's homestead did not preclude forfeiture of petitioner's interest in the property. United States v. Fleet, 498 F.3d 1225, 1228 (11th Cir. 2007). Additionally, counsel was appointed to represent petitioner, not his wife or family. Petitioner has shown neither deficient performance nor prejudice with regard to the forfeiture of his interest in the real property.

**(3) Calculation of Loss Amount; Offset Amounts**

Petitioner argues that the loss amount was incorrectly calculated, and counsel improperly failed to challenge the amount. Petitioner only raises this summarily in Ground One, while addressing it at length as Ground Two. The Court will likewise address these issues in Ground Two.

**B. Ground Two: Appeal Rights/Offset to Loss Amount/Amount Derived From Wells Fargo**

**(1) Waiver of Appeal Rights**

Ground Two in the § 2255 Motion, not included in the Memorandum or Amended Memorandum, argues that counsel was ineffective for letting petitioner sign a plea agreement that waived his right to appeal. (Cv. Doc. #1, pp. 6-7.) This portion of Ground Two is denied because the record establishes that petitioner entered pleas of guilty without the benefit of a plea Agreement (Cr. Docs. ## 144-51), and petitioner did file an appeal (Cr. Docs. #171, #201), which was decided on the merits.

**(2) Offsets to Loss Amount**

In Ground Two of the Memorandum, Petitioner concedes that there was no dispute that the correct loss amount was $2,298,233.93 (Cv. Doc. #2, pp. 5, 7), as set forth in the Presentence Investigation Report. The problem, petitioner asserts, is that his attorney failed to argue that this amount should have been reduced by amounts which were paid back to victims. Petitioner

asserts that the proper credit reductions would have resulted in a reduction of the base offense level, which in turn would have resulted in a significantly lower sentence on the fraud counts. (Cv. Doc. #2, pp. 4-8.) Petitioner has calculated the effect of the lack of credits differently in his papers. In his initial Memorandum, petitioner asserts:

> These numbers total of $1,031,497.37 and movant's loss amount should be reduced by that number. That would in turn mean movant's loss amount should actually be $1,795,441.34. Since the loss is now below $550,000, movant's sentence should be reduced by four levels or to level 22 from level 26. This is a reduction in the movant's sentence, assuming he was sentenced at the top of the guidelines, of thirty seven months.

(Cv. Doc. #2, p. 8.) More recently, petitioner asserts that the credits would reduce the loss amounts to $718,857.63, which would have resulted in a two-level reduction in the base offense level. (Cv. Doc. #15, p. 4.) Petitioner also asserts that the lack of reductions for such credits should have been raised on direct appeal, but was not. (Cv. Doc. #1, p. 12.)[1]

The Base Offense Level for the fraud offenses in the Superseding Indictment was level 7. <u>See</u> U.S. Sentencing Guidelines Manual (USSG) § 2B1.1(a)(1). This level may then be

---

[1] Petitioner also asserts in Ground Two that the restitution amount should have been reduced. As stated in Ground One, claims relating to the amount of restitution are not cognizable in a § 2255 proceeding.

increased based on the amount of loss.  See USSG § 2B1.1(b).  The

Presentence Investigation Report calculated the loss amount in

this case as follows:

> The offense conduct reflects that the total
> loss amount is $2,298,233.93.

| | |
|---|---|
| Wells Fargo | $1,064,664.74 |
| CIT | $421,512.25 |
| CIT (Relevant Conduct) | $63,552.93 |
| Key | $748,504.01 |
| Total: | $2,298,233.93 |

(Cr. Doc. #163, ¶ 66.)  Because the loss was more than $1.5 million

but less than $3.5 million, 16 levels were added to the Base

Offense Level.  See USSG § 2B1.1(b)(1)(I).

The Sentencing Guidelines also provide, however, that the

loss amount shall be reduced by certain credits against loss in

some circumstances.  The relevant portion of the Sentencing

Guidelines provides:

> Loss shall be reduced by the following:
>
> (i) The money returned, and the fair market
> value of the property returned and the
> services rendered, by the defendant or other
> persons acting jointly with the defendant, to
> the victim before the offense was detected.
> The time of detection of the offense is the
> earlier of (I) the time the offense was
> discovered by a victim or government agency;
> or (II) the time the defendant knew or
> reasonably should have known that the offense
> was detected or about to be detected by a
> victim or government agency.

U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.3(E)(i).

In this case, petitioner asserts he was entitled to credits against the loss amount totaling either $1,031,497.37 (Cv. Doc. #2, p. 8) or $1,579,807.30 (Cv. Doc. #15, p. 4) based upon funds repaid to the victims. None of the amounts now claimed by petitioner as the source of a credit against loss amount could be credited to petitioner. Neither his trial attorney nor his appellate attorney provided ineffective assistance by failing to raise these issues.

As the commentary to USSG § 2B1.1 provides, money returned to a victim is only credited against the loss amount if the money is returned to the victim before the offense was detected. U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.3(E)(i). "The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency." Id.

Here, the offenses were alleged to have occurred between at the latest February 2013 through on or about July 18, 2014 (Cr. Doc. #18, p. 4.) The original Indictment (Cr. Doc. #3) was filed on January 21, 2015. Petitioner's scheme was detected by law enforcement no later than the Spring of 2014, when the Federal Bureau of Investigation in Jacksonville traced the domain names

and email addresses to an internet service provided in petitioner's wife's name according to the Presentence Investigation Report. (Cr. Doc. #163, ¶¶ 10, 23.)  None of the amounts for which petitioner seeks credit were paid to the victims prior to the date of the original Indictment, much less when the scheme was detected. The Court addresses each of petitioner's claimed omissions from the calculation of the loss amount to the victims below.

### (a) Wells Fargo:

In his initial Memorandum, petitioner asserts that Wells Fargo's loss should have been reduced by $100,219.29 paid from Suntrust Bank and by $218,718.04 paid by Fifth Third Bank.  (Cv. Doc. #2, p. 7.)  Petitioner later explains that Wells Fargo received funds "prior to the indictment" when the $318,937.33 was released by the United States and received by Wells Fargo on January 30, 2016.  (Cv. Doc. #15, p. 2.)  Petitioner asserts that this money was recovered prior to his indictment, but retained by the government until the day of sentencing, when it was released to Wells Fargo.  (Id.)  Further, petitioner asserts that an additional $488,175.96 was recovered by Wells Fargo.  (Id.) Petitioner attaches a copy of the Motion For Entry of Final Judgment filed by Wells Fargo in the state case which states that Wells Fargo recovered $318,937.33 prior to filing its Amended Complaint and recovered another $488,175.96 on or about September

27, 2018 from the government's sale of the forfeited real property. (Cv. Doc. #10-1, ¶ 14.)  In sum, petitioner asserts he should have been credited with $807,113.29 paid to Wells Fargo.  (Cv. Doc. #15, p. 4.)

The record reflects that none of these funds were returned to Wells Fargo before the offense was detected.  Therefore, petitioner was not entitled to a credit against the loss for any of these amounts, and counsel was not ineffective in failing to present such an argument at sentencing or on direct appeal.

**(b)  Key Equipment:**

Petitioner asserts that Key Equipment recovered $712,504.01 prior to the indictment because a Hold Harmless letter was provided by JP Morgan Chase Bank.  (Cv. Doc. #2, p. 7; Cv. Doc. #10, p. 2; Cv. Doc. #15, p. 2-3.)  Petitioner asserts that this left only $36,000 due to Key Equipment.  (Cv. Doc. #2, p. 7.) Petitioner asserts he should have been credited with $712,504.01 paid to Key Equipment.  (Id., p. 4.)

Receiving a hold harmless letter is not the same as receiving funds.  Additionally, petitioner makes no showing that Key Equipment received any funds prior to the detection of the offenses in this case.  Therefore, petitioner was not entitled to a credit against the loss amount, and counsel did not provide ineffective

of counsel in failing to raise the issue either at sentencing or on direct appeal.

### (c) CIT, Inc.:

Petitioner asserts that CIT was paid $60,190.00. (Cv. Doc. #15, p. 4.) Petitioner makes no factual representations about this, and does not allege or show that such money was paid prior to the detection of the offenses. Even if this amount is credited against loss amount, it would not be sufficient to change the calculation of the Sentencing Guidelines range. Therefore, counsel did not provide ineffective of counsel in failing to raise the issue either at sentencing or on direct appeal.

### (d) Forfeiture Amounts to Victims

Petitioner also asserts that he should have received credit in the calculation of the loss amount pursuant to the Final Order of Forfeiture (Cr. Doc. #205) issued on February 9, 2018 addressing the distribution of the proceeds for the sale of his former residence. (Cv. Doc. #2, p. 8; Cv. Doc. #15, p. 3.) Further, petitioner asserts that the property was sold in 2018 for an undervalued total of $600,000, which amount he claims should have been offset against the total loss amount under the Sentencing Guidelines calculation. (Cv. Doc. #15, pp. 3-4.) These amounts were paid long after the sentencing, and there is no basis to credit the amounts against the loss amount. Petitioner was not

entitled to a credit against the loss for any of these amounts, and counsel was not ineffective in failing to present such an argument at sentencing or on direct appeal.

**(3) Reduction of Amount Derived From Wells Fargo**

Petitioner asserts that with the proper reduction credits, petitioner did not derive more than $1 million from Wells Fargo, as required by USSG § 2B1.1(b)(16)(A). This made the two-level upward adjustment inappropriate. Petitioner asserts that "the reduction of the loss amount, plus the non-inclusion of a non-financial institution, CIT Group, Inc. ($485,065.18) the total loss amount is only $293,551.42 ($778,616.60 discussed above less $485,065.18). This amount is substantially below the $1,000,000 enhancement amount." (Cv. Doc. #15, pp. 4-5.) Petitioner also asserts that the miscalculation should have been raised on direct appeal. (Cv. Doc. #1, p. 12; Cv. Doc. #2, p. 8.) As stated above, none of these amounts could be credited against The loss amount, and therefore petitioner did derive more than $1 million from Wells Fargo. Because there was no valid basis to object to this specific offense characteristic, counsel did not provide ineffective assistance by failing to raise the issue at sentencing or on direct appeal.

**(4)  Ground Three:  Forfeiture of Personal Residence**

In Ground Three, petitioner repeats that portion of Ground One which asserts that his trial attorney was ineffective by failing to protect his personal residence from forfeiture, which adversely affected his wife and daughter.  Petitioner concedes that there is an argument the house was a result of ill-gotten gains, at least 50% belonged to his wife, who was on the title. Petitioner argues that the time allowed for his wife to file a claim for her portion occurred during her cancer treatments, which were ultimately unsuccessful.  (Cv. Doc. #1, pp. 7-8; Cv. Doc. #2, pp. 9-10.)

As discussed above, even if forfeiture is a proper issue for a § 2255 proceeding, petitioner cannot prevail on this issue. There was no basis to contest the forfeiture of petitioner's interest in the property, as counsel did not represent petitioner's wife or family.

**(5) Ground Four: Cumulative Impact**

In Ground Four, Petitioner asserts that the cumulative impact of the errors by trial/appellate counsel require reversal of his convictions and sentence, or at least deprived him of due process and the effective assistance of counsel.  Alternatively,

petitioner seeks an evidentiary hearing to fully develop the facts. (Cv. Doc. #1, pp. 9-10; Cv. Doc. #2, pp. 10-11.)

As set forth above, there were no errors by either trial counsel or appellate counsel in the handling of petitioner's case. Therefore, this issue is without merit.

**(6)  Ground Five:  Evidentiary Hearing**

What petitioner labels as Ground Five simply seeks an evidentiary hearing if the Court cannot grant the motion. (Cv. Doc. #1, pp. 10-11; Cv. Doc. #2, pp. 11-13.) As set forth above, the record demonstrates that no errors were committed by petitioner's trial counsel or on direct appeal. Therefore, no hearing is warranted.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #211) is **DENIED** in its entirety on the merits.

2.  The Clerk of the Court shall enter judgment accordingly and close the civil file.  The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.** A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this ___26th___ day of February, 2020.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Petitioner
AUSA